UNITED STATES, Appellee

v

WOODROW M. SALLEY, Airman First Class,
U. S. Air Force, Appellant

7 USCMA 603, 23 CMR 67

No. 8852

Decided February 21, 1957

*Captain John H. Leonard* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Stanley S. Butt.*

*Captain John W. Fahrney* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused, Airman First Class Woodrow M. Salley, was tried and con- victed of lifting up a weapon against a superior officer and of assault with a deadly weapon upon a noncommis-

sioned officer, in violation of Articles 90 and 128, Uniform Code of Military Justice, 10 USC §§ 890 and 928, respectively. He was sentenced to be dishonorably discharged, to suffer total forfeitures, and to be confined at hard labor for five years. The convening authority approved the punitive discharge, but suspended it until release from confinement or completion of appellate review, whichever occurred later. He also approved the forfeitures and four years' confinement. The board of review affirmed. A hearing was granted by this Court to determine whether the trial court was sufficiently advised by the law officer regarding its right to examine records and call witnesses in connection with the physical and mental condition of the accused.

The accused was taken to the supply room to draw field equipment in preparation for a guard detail. He drew the equipment and while returning to the orderly room, indicated his chagrin over being assigned guard duty for a base alert by stating that he was going to get a .32 caliber pistol, which he had in his barracks, and "shoot anyone who challenged him on his post." Thereupon the accused inserted a clip of ammunition in his carbine, entered the orderly room and ordered the first sergeant, who was attempting to call the Air Police, to put down the phone. The accused then kept the first sergeant and the other occupants of the room—including an Air Police captain who had arrived to investigate—as hostages for approximately an hour. During this time the accused expressed concern about all the courts-martial which had been convened in the squadron. It was his considered opinion, according to one of the witnesses, that the organization was "trying to jail everyone and that he had a clean record up to this time and now that he has started he might as well go on through with it." The accused finally cleared his weapon, threw it on the floor and walked out of the room visibly shaken "shuddering and half sobbing."

At the trial the accused pleaded not guilty; called no witnesses; nor did his counsel make a final summation for him. After the parties had rested, the trial counsel inquired of the court as to whether it desired any witnesses called or recalled. The president retorted that "The court has a question in regard to evidence that was indicated but wasn't brought forth in the trial. The court would like to see it, if it is available." The president went on to indicate that the court desired to see medical records from a nearby Army hospital pertaining to an observation and blood serology reportedly taken of the accused. Thereupon the law officer advised the court that, "Very likely, none of the medical records would be admissible. The testimony of a witness who may have examined the accused would be. If that is your desire, quite possibly we could get someone." When asked exactly what he had in mind, the president replied that the court was interested in "The actual physical condition of the man at the time . . . there was some conflicting evidence as to the man's condition." The law officer pointed out that a number of witnesses present at the time of the incident had already testified and, if need be, more could be called. After this, the president indicated—if the other members of the court were satisfied—his desire to withdraw the request for the additional data provided "there is no further indication . . . that the defense does not plead insanity. I understood the plea of the defense would be temporary insanity." Upon being assured that the accused had not pleaded temporary insanity but not guilty, the president expressed the court's desire to proceed with the trial. Not only was no psychiatric testimony forthcoming from any source at the trial, but during a statement in mitigation, the defense counsel remarked, "Perhaps, as I noted from your questions, you are wondering why a plea of temporary insanity wasn't interposed. To be honest with you, the defense did not have the evidence to prove temporary insanity."

The accused argues that the law officer's advice with respect to the medical records was error in that it foreclosed the court from obtaining additional evidence as authorized under paragraph 54b, Manual for Courts-Martial, United States, 1951, as we have construed that authorization in United States v Parker,

604

7 USCMA 182, 21 CMR 308. In the Parker case, supra, we held that the right of the court to request additional evidence was discretionary, and it had the unrestricted right to call for further witnesses subject only to the law officer's determination of admissibility:

"In view of the authorities above announced we are of the opinion that it is discretionary as to whether or not the court will order further evidence to be introduced after it has retired to deliberate on the findings. In reaching this determination we have not overlooked the provision in the procedural guide of the Manual (page 517) that the law officer 'will rule finally as to whether the witness will be called.' Nor do we ignore Article 51(b) of the Code that makes interlocutory rulings by the law officer final. In construing these two provisions, together with the procedure authorized in paragraph 54b of the Manual, we hold that a court-martial has the unrestricted right to call for further witnesses, subject only to the law officer's determination of admissibility."

It is clear in this case that the law officer did no more than possibly indicate how he might rule with regard to the evidence requested. He did not foreclose the right of the court to obtain such evidence. While the court expressed a desire to see the medical reports growing out of an observation of the accused following the incident, the law officer indicated that the court was not necessarily entitled to have presented all of the hospital data compiled with respect to the accused. It would have only been authorized to examine the reports insofar as they might have qualified as an official record or business entry exception to the hearsay rule. Probably the nature of the data could only have been qualified under the latter exception. This would have meant calling a witness, or witnesses, to lay a foundation showing the established practice of keeping and recording such information. In all probability, it would have been just as easy, and certainly more advantageous to the accused, to have had the individuals who made the records called and thus to have been afforded the opportunity to examine them. Therefore, from a trial standpoint—since the witnesses were reasonably available—their testimony would have presented the best evidence of the accused's mental aberrations, if any. The law officer offered to call these witnesses if the court so desired. At no place in the record do we find any evidence that the law officer suggested that the court could not obtain this evidence, and we are singularly unimpressed by the defense argument that even though the law officer advised the court that the testimony of the witnesses who examined the accused would have been admissible, he erred by his failure to explain to them the mechanics of obtaining the actual presence of such individuals. This requires a degree of naivete which we are unwilling to ascribe to the members of the court. It is manifest from the record that the court was aware of its rights to request and obtain the evidence and that it made an informed choice to "withdraw its request" and that it had "no objection to proceeding as we are going."

In view of our determination that the right to call additional witnesses was not foreclosed by the law officer, we deem it unnecessary to discuss the correctness of those hypothecated rulings on evidence not offered. Certainly in view of the prompting by the court, the defense counsel would have called the witnesses and introduced the evidence had he deemed it beneficial to his cause. Conspicuous by its absence is any defense motion for an appropriate relief in order to obtain this evidence.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.